IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FUSE SATELLITE, LLC,<br><br>                 Plaintiff,<br>v.<br><br>NATIONAL TECH SERVICES d/b/a NTS;<br>EZIQUIEL GARCIA; and MICHAEL<br>PRATHER,<br><br>                 Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO CHANGE VENUE PURSUANT 28 U.S.C. § 1404(a)**<br><br>Case No. 2:16-cv-01200-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the Court is a Motion to Change Venue filed by Defendants National Tech Services, Eziquiel Garcia, and Michael Prather. (Docket No. 6). As explained below, the Court DENIES the Motion.

## BACKGROUND

This lawsuit arises from a contractual dispute between two companies who deal in satellite television subscriptions. The first, Plaintiff Fuse Satellite ("Fuse"), is a sales and marketing company based in Utah, with door-to-door sales forces in numerous states. The second, Defendant National Tech Services ("NTS"), is a partnership that also specializes in sales and marketing and is based in Texas. Defendants Eziquiel Garcia and Michael Prather are allegedly the sole partners of NTS. Both Fuse and NTS apparently act as intermediaries between customers and DirecTV, selling DirecTV subscriptions door-to-door and installing satellite systems in exchange for commissions from the provider.

At some point in 2015, Defendants Garcia and Prather allegedly began working with Fuse as independent contractors. After Defendants Garcia and Prather formed NTS in 2016, they allegedly entered into an oral agreement with Fuse regarding certain Spanish-speaking customers

in Texas. The agreement was allegedly shaped over several discussions—conducted via telephone, text messages, and in-person meetings—between Fuse representatives in Utah and Defendants Garcia and Prather in Texas. Pursuant to the agreement, Fuse representatives working in Texas were to refer interested Spanish-speaking customers to NTS, who would then connect the customers with DirecTV and pay Fuse a commission from the resulting profit. A dispute soon arose regarding the amount owed to Fuse in commissions and Fuse's access to a DirecTV "portal"—an interface that allowed dealers to track customer data and payments from DirecTV. Communication between Fuse and NTS broke down, the business relationship soured, and the instant lawsuit resulted.

Fuse filed the instant lawsuit in Utah state court on October 24, 2016 and NTS[1] was served with the complaint three days later. NTS removed the lawsuit to this Court on November 28, 2016 on the basis of diversity jurisdiction. (Docket No. 2). On December 9, 2016, NTS filed the instant Motion to Change Venue, requesting a transfer to the United States District Court for the Western District of Texas. (Docket No. 6). Fuse filed a memorandum in opposition on January 5, 2017. (Docket No. 17). NTS did not file a reply in the time allotted by the local rules and did not otherwise submit the Motion for decision. The Court concludes that oral argument would not materially advance resolution of this Motion and therefore resolves the Motion on the briefs. *See* DUCivR 7-1(f).

**DISCUSSION**

As explained above, Defendants request transfer of this case to the Western District of Texas pursuant to 28 U.S.C § 1404(a). Under that section, this Court "may transfer any civil action to any other district or division where it might have been brought or to any district or

---

[1] From this point forward, the opinion refers to all Defendants collectively as "NTS."

division to which all parties have consented." 28 U.S.C § 1404(a). However, the Court may make such an order only upon a showing that "the convenience of parties and witnesses" and "the interest of justice" justify transfer. *See id.*; *Atl. Marine Const. Co. v. U.S. Dist. Court*, 134 S. Ct. 568, 580 (2013) (explaining that § 1404(a) codified "the doctrine of *forum non conveiens* for the subset of cases in which the transferee forum is within the federal court system"). Thus, any party moving for a transfer under § 1404(a) must clearly demonstrate "that: (1) the transferee court is a proper forum in which the action could have been brought originally; and (2) the transfer will enhance the convenience of the parties and witnesses, and is in the interest of justice." *Cmty. Television of Utah, LLC v. Aereo, Inc.*, 997 F. Supp. 2d 1191, 1205 (D. Utah 2014) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616, 634 (1964)).

Here, neither party disputes that the Western District of Texas is an appropriate transferee forum under § 1404(a). Accordingly, the Court need only evaluate whether the requested transfer will materially "enhance the convenience of the parties and witnesses, and is in the interest of justice." *See id.* Again, "[t]he 'party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient.'" *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)); *see also Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967). In evaluating the relative inconvenience of this forum and the interest of justice, courts must consider

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (brackets omitted) (quoting *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991)).

Here, NTS focuses its arguments entirely on a single factor—"the accessibility of witnesses and other sources of proof." *See id.*; (Docket No. 6, at 6–7). NTS asserts that the "only reason Fuse filed this lawsuit in Utah was to make litigation costly for NTS as all witnesses, customers, [and] sales force [are located in Texas] and [all] customer service calls and [other] service[s] were performed in Texas." (*Id.* at 7). Fuse responds that its choice of forum weighs heavily against transfer, *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (explaining that a plaintiff's choice of forum "should rarely be disturbed"), and that NTS has failed to demonstrate that Utah is inconvenient vis-à-vis the accessibility of witnesses and other sources of proof, (Docket No. 17, at 5). As explained below, the Court agrees with Fuse and concludes that NTS has failed to carry its burden to demonstrate any inconvenience necessitating transfer. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (placing the burden on movant to demonstrate inconvenience of a given forum).

### A. FUSE'S CHOICE OF FORUM

The Court finds that the first factor—the plaintiff's choice of forum—weighs heavily against transfer. "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (brackets and quotations omitted) (quoting *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992)). Thus, district courts must normally accord "great weight" to the plaintiff's choice of forum. *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998). But, "where the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum," courts treat plaintiff's choice of forum with significantly less deference—assigning it

"little weight" in the balance of factors. *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168 (quotations omitted) (quoting *Cook v. Atchison, Topeka & Santa Fe. Ry. Co.*, 816 F. Supp. 667, 669 (D. Kan. 1993)).

Here, NTS appears to argue that Utah has little connection to the instant lawsuit because any sales under the purported agreement occurred in Texas and the only connection between the lawsuit and Utah is the presence of the Fuse representatives who brokered the agreement with NTS. The Court disagrees. The presence of critical witnesses with testimony relating to the formation of an oral agreement—here, the Fuse representatives who negotiated the agreement at issue—is a significant connection to Utah. *See F.H.G. Corp. v. Green Wave, Inc.*, No. 1:16-cv-00147-JNP, 2017 WL 2728412, at *4 (D. Utah Jun. 23, 2017) (unpublished) (finding that "the undisputed presence of . . . relevant witnesses in Utah forms a 'significant connection' with the forum for purposes of § 1404(a) analysis"); *Corel Software, LLC v. Microsoft Corp.*, No. 2:15-cv-528-JNP-PMW, 2016 WL 782249, at *2 (D. Utah Feb. 26, 2016) (unpublished) (finding that the presence of "critical witnesses whose testimony is pertinent to this action" was part of a significant connection to the plaintiff's chosen forum). Moreover, it appears that some of the negotiations at issue may have occurred in Utah or at least took place over phone or text while Fuse representatives were in Utah. (*See* Docket No. 18, at 3).

While Texas may also have a "significant connection" to this lawsuit, that fact does not in any way lessen the lawsuit's connection to Utah. *See F.H.G. Corp.*, 2017 WL 2728412, at *5 ("[T]he inquiry at this stage is not whether some other forum has a *greater* material relation or significant connection—it is whether this particular forum has at least *some* 'material relation or significant connection' to the 'facts giving rise to the lawsuit.'" (emphasis in original) (quoting *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1168)); *Butikofer v. Nygren*, No. 2:16-cv-00610-DN, 2016

WL 7190556, at *4 (D. Utah Dec. 12, 2016) ("Each of these other venues may have a significant connection to the operative facts, but this does not diminish the material connection [to] Utah."). Accordingly, the Court finds that Fuse's choice of Utah as a forum for resolution of this dispute is entitled to "great weight." *KCJ Corp.*, 18 F. Supp. 2d at 1214.

### B. ACCESSIBILITY OF WITNESSES AND OTHER SOURCES OF PROOF

The Court finds that the second factor—the accessibility of witnesses and sources of proof—weighs against transfer. The Tenth Circuit has indicated that "[t]he convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (internal quotations omitted) (quoting *Cook*, 816 F. Supp. at 669). In order to establish that the inconvenience to material witnesses weighs in favor of transfer, "the movant must (1) identify the witnesses and their locations; (2) 'indicate the quality or materiality of their testimony' and (3) 'show that any such witnesses [are] unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary.'" *Id.* (alterations in original omitted) (quoting *Scheidt*, 956 F.2d at 966).

Here, NTS argues that "there are no witnesses located in Utah other than the principals of Fuse that entered into negotiations with [NTS]." (Docket No. 6, at 7). This argument, standing alone, fails to establish that the inconvenience to material witnesses weighs in favor of transfer. NTS has only generally identified "Fuse[']s sales managers and sales teams" located in Texas as potential witnesses, (*id.*), and has otherwise failed to demonstrate either "the quality or materiality of their testimony" or that these potential witnesses are "unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary," *see Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169. On the other hand, it is undisputed that the Fuse representatives who brokered the purported agreement between Fuse and NTS are

6

currently located in Utah. On the available record, it appears that discovery and trial in Texas would be equally inconvenient to Utah-based witnesses as trial in Utah would be to those witnesses located in Texas. Section 1404(a) does not permit NTS to "merely shift[] the inconvenience" from itself to Fuse. *See id.* at 1167. Given the presence of material witnesses in this forum and the utter failure of NTS to meet its three-part burden regarding the inconvenience of witnesses under Tenth Circuit law, the Court finds that this factor weighs against transfer.

### C. BALANCE OF FACTORS

Because the only factors addressed by the parties clearly weigh against transfer, the Court concludes that transfer to the Western District of Texas is inappropriate. NTS has failed to carry its burden to show that "the convenience of parties and witnesses" or "the interest of justice" favor a transfer of venue in this case. *See* 28 U.S.C. § 1404(a); *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (explaining that the proponent of transfer must shoulder the burden of demonstrating that a change of venue is appropriate under § 1404(a)).

### CONCLUSION

Based on the foregoing, NTS's Motion to Change Venue pursuant to 28 U.S.C. § 1404(a) is **DENIED**. (Docket No. 6). The case will proceed in this forum as originally filed.

IT IS SO ORDERED.

Signed September 5, 2017.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge